In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00200-CV**
_____

**ARTHUR F. PRESTON, Appellant**

**V.**

**STEPHANIE ANN DYER, Appellee**

**On Appeal from the 418th District Court**
**Montgomery County, Texas**
**Trial Cause No. 09-02-01826 CV**

**MEMORANDUM OPINION**

In this appeal, we are asked to decide whether an arbitration agreement allowed the arbitrator to award spousal support and child support under the terms of the parties' premarital agreement. The arbitrator decided most of the issues in dispute in favor of Stephanie Ann Dyer; dissatisfied with the arbitrator's rulings, Arthur F. Preston has filed this appeal.

The premarital agreement between Preston and Dyer provides that it is to be governed by the Texas Arbitration Act; the arbitration clause in the agreement states that

"all disputes, controversies, and questions as to rights and obligations relating to this agreement are subject to arbitration and such arbitration shall be governed by the provisions of the Texas Arbitration Statute, Civil Practice and Remedies Code section 171.001 et.seq." For the reasons discussed below, we conclude the scope of arbitration provision in the parties' agreement authorized the arbitrator to resolve the issues the parties placed before him, including the issues of spousal support, child support, and attorney's fees. We further conclude that Preston waived any complaints regarding the timeliness of the arbitrator's award because he failed to lodge an objection claiming the arbitrator was tardy in issuing his award. Preston's argument that the trial court erred by including a warning in the final decree about the consequences of failing to obey the trial court's child support order is also without merit. After carefully considering Preston's issues, we affirm the trial court's judgment.

Issues

Preston raises five issues in his appeal. Issues one through three, and issue five, assert the arbitrator exceeded his authority by reaching several issues that were in dispute. According to Preston, the arbitrator exceeded his authority by:

- Awarding spousal support when the contract said no support was due,

- Awarding spousal support when the premarital agreement reserved the decision to pay support to Preston,

2

- Awarding attorney's fees when the premarital agreement's only express provision for recovering attorney's fees authorizes fees against a party who attempts to obtain "an interest, lien, or encumbrance against or in the other party's property[,]" which is not the basis of the fees that were awarded in this case, and

- Issuing any award because the time period provided by the premarital agreement for the arbitrator to render the award had expired.

In his remaining issue, Preston objects to the trial court's language in the final decree that warns of the consequences of a party's failure to meet the required child support obligations. In that issue, issue four, Preston contends the arbitrator awarded child support based on the terms of the premarital agreement; consequently, he argues the trial court erred in "convert[ing] this obligation to a mandatory order" that subjects him to the trial court's contempt power. For convenience, we have grouped Preston's issues arguing that the arbitrator decided matters that were not arbitrable together, and have placed issue four, an argument that does not concern the scope of the parties' arbitration agreement, last.

## Scope of Arbitration

In 2001, Preston and Dyer executed a premarital agreement to control the ownership of their property in the event they were to marry, as well as spousal support

3

and child support if they were to marry and then divorce. After they married, their son, C.P., was born.

In late 2008, Preston and Dyer separated. Several months later, Preston sued for divorce. In his petition asking the trial court to terminate the marriage, Preston requested that the trial court compel the parties to arbitrate their disputes based on the provisions of the parties' premarital agreement. When Dyer answered, she filed a counter-suit. Relying on the premarital agreement, Dyer also asked the trial court to compel the parties to arbitrate.

Subsequently, Dyer filed a plea to the jurisdiction, asserting the trial court did not possess subject-matter jurisdiction over the child custody portion of the case because C.P.'s home state was Kentucky. Dyer also filed a petition, in Kentucky, asking that she be given custody of C.P. In 2009, before the Kentucky court acted on the custody issue, the Texas court, by agreed order, required the parties to arbitrate all claims, except the child custody issue. The agreed order reflects the parties' agreement to allow the arbitrator to make a child support determination, with the arbitrator's decision to then "be incorporated into a Final Decree of Divorce which will be submitted to the Court for entry."

In April 2010, the Kentucky court gave Preston and Dyer joint custody of C.P. In May 2010, the arbitrator conducted a hearing to decide any remaining arbitrable issues. While Preston challenged the arbitrator's right to decide whether Dyer could recover

4

spousal support,[1] he asked that the arbitrator "make a child support award, giving proper weight to all relevant factors, including but not limited to the fact that he will be a joint custodian and will have possession of [his son] 50% of the time under the time sharing provisions of the Kentucky custody order."

In August 2010, the arbitrator rendered an award. Under the award, the arbitrator interpreted the provisions in the premarital agreement, finding that the agreement obligated Preston to pay both spousal support and child support. The arbitrator also found in Dyer's favor on her request to be awarded attorney's fees. Dissatisfied with the arbitrator's award, Preston asked the trial court to set the award aside because the arbitrator had exceeded his powers. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(3)(A) (West 2011) (providing that a trial court shall vacate an award if arbitrators exceed their power). The trial court refused to vacate the award; instead, it incorporated the award into the parties' final decree of divorce. Subsequently, Preston appealed.

Standard of Review

In issues one through three, and in issue five, Preston alleges the trial court should not have confirmed the award because the arbitrator exceeded his authority. In reviewing a claim asserting that an arbitrator exceeded the authority granted by an arbitration

---

[1]In the arbitration proceeding, Preston argued that because the Kentucky decree did not give Dyer the "'exclusive right to determine the primary residence of the child[,]'" she did not qualify for spousal support under the terms of the parties' premarital agreement.

5

agreement, we have observed: "The scope of an arbitrator's authority to adjudicate a dispute is determined by the scope of the controlling arbitration clause." *The City of Beaumont v. Int'l Ass'n of Firefighters*, *Local Union No. 399*, 241 S.W.3d 208, 212 (Tex. App.—Beaumont 2007, no pet.). An arbitration award that exceeds the authority conferred by the arbitration agreement is void. *Id*. at 214.

While judicial review to determine whether an arbitrator correctly applied the law to the facts is generally limited under the Texas Arbitration Act, the parties, by their contract, may agree to allow for judicial review of an arbitration award for reversible error. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97 (Tex. 2011). Absent an agreement for expanded judicial review, judicial review of an arbitration award "is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied). In this case, the parties' premarital agreement does not contain a provision allowing for an expanded judicial review of the arbitrator's decision, so our review is limited to determining whether the matters the arbitrator decided were within the scope of the parties' agreement to arbitrate. *See Int'l Ass'n of Firefighters*, 241 S.W.3d at 212-13.

"Whether a given arbitration clause imposes a duty to arbitrate is a matter of contract interpretation and a question of law for the court." *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no

pet.). Because the scope of arbitration is a question of contract interpretation, it is a question that is reviewed *de novo*. *Id.* (citing *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Dell, Inc. v. Muniz*, 163 S.W.3d 177, 180 (Tex. App.—San Antonio 2005, orig. proceeding); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 589-90 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

### Scope of arbitration clause

In issues one and two, Preston argues the arbitrator exceeded his authority by awarding spousal support. According to Preston, the premarital agreement provides that, in the event the marriage was to end in divorce, Preston had the sole discretion to determine if Dyer was entitled to spousal support. Preston also argues that the arbitrator misinterpreted Kentucky law when he found that the Kentucky court gave Dyer the equivalent of an exclusive right to determine the primary residence of the child; Preston argues that the Kentucky court did not do so. According to Preston, for these reasons, we should vacate the arbitrator's award of spousal support.

The parties agree that the Texas Arbitration Act governs this case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.001-.098 (West 2011). Under the TAA, a court must confirm an arbitration award on application unless an opposing party establishes a statutory ground for vacating, modifying, or correcting the award. *See id.* § 171.087; *Centex/Vestal*, 314 S.W.3d at 683. Section 171.088 of the TAA provides for vacatur when, among other things, an arbitrator exceeds his power. *See* Tex. Civ. Prac. & Rem.

7

Code Ann. § 171.088(a)(3)(A). "The authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Centex/Vestal*, 314 S.W.3d at 684 (citing *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959)). "Arbitrators exceed their powers when they decide matters not properly before them." *Id.* In determining whether the arbitrator has exceeded his power, any doubts concerning the scope of what is arbitrable are resolved in favor of arbitration. *Id.*

While Preston argues that *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84 (Tex. 2011), expands judicial review of the award in this case because the arbitrator exceeded his authority by thwarting the parties' expectations and contract, we do not agree. In *Nafta*, the parties' arbitration agreement contained a provision stating that the "arbitrator appointed to resolve disputes between them 'does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law.'" *Id.* at 91. The Supreme Court held in *Nafta* that the "TAA presents no impediment to an agreement that limits the authority of an arbitrator in deciding a matter and thus allows for judicial review of an arbitration award for reversible error." *Id.* at 97. However, with respect to the arbitration provisions in the premarital agreement before us in this case, none of the provisions of the agreement curtail the arbitrator's general authority to decide disputes arising from the agreement. Nor is there a provision that allows for expanded

8

judicial review. Absent limitations on the arbitrator's authority allowing for expanded judicial review, the parties are assumed to have agreed to the type of judicial review that is provided by the TAA—restricted judicial review. *See id.* at 101.

The agreement to arbitrate required the parties to arbitrate "all disputes, controversies, and questions as to rights and obligations relating to this agreement[.]" Clearly, the scope of the potentially arbitrable disputes under the agreement is broad; that breadth is reinforced by a provision that allowed the arbitrator to interpret the agreement, as one of the provisions in the parties' agreement provides that "all issues concerning interpretation or enforceability of this agreement shall be submitted to arbitration." In contrast, the provision relating to the potential for judicial review clearly provides for restricted judicial review, allowing at most little oversight of the arbitrator's decisions. The parties' agreement states that the arbitrator's decision "shall be final and conclusive with respect to any matter referred to arbitration pursuant to this agreement."

Because the premarital agreement authorized the arbitrator to interpret the premarital agreement and to render an award of spousal support, we conclude that the dispute over spousal support is an issue the parties intended and agreed to arbitrate. *See Centex/Vestal*, 314 S.W.3d at 684. Consequently, we hold that the arbitrator did not exceed his power by awarding spousal support. It follows that the trial court did not err by refusing Preston's request to vacate the spousal support portion of the arbitrator's

award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A). We overrule issues one and two.

Timeliness of Award

In issue three, Preston complains the arbitrator exceeded his authority and was without jurisdiction to issue the award because the arbitrator did not render a decision within the time periods provided by either the premarital agreement or the applicable rules for arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.053. However, Preston did not lodge any objection on that basis before the arbitrator issued the award. According to Dyer, by failing to object, Preston waived any complaint regarding the timeliness of the award. Complaints concerning the tardiness of an arbitration award are waived "unless the party notifies the arbitrators of the objection before the delivery of the award to that party." *Id.* § 171.053(e). By subjecting an arbitrator's tardiness to the doctrine of waiver, the Legislature intended to allow the award to be enforced unless a party filed a timely objection complaining about the delay.

Generally, a party challenging an arbitration award must comply with the error preservation requirements that apply to trials "'just as if the award were a court judgment on appeal.'" *Quinn v. Nafta Traders, Inc.*, 360 S.W.3d 713, 719 (Tex. App.—Dallas 2012, pet. denied) (quoting *Nafta Traders, Inc.*, 339 S.W.3d at 101-02). "As such, our rules for preserving complaints for appeal will also apply to our review of arbitration awards and generally require a party to present a complaint to the arbitrator by timely

10

request, objection, or motion with sufficient specificity as a prerequisite to judicial review." *Id.* We agree that "'[a] party may not sit idly by during an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrator when the result turns out to be adverse.'" *See Skidmore Energy, Inc. v. Maxus (U.S.) Exploration Co.*, 345 S.W.3d 672, 684 (Tex. App.—Dallas 2011, pet. denied) (quoting *Bossley v. Mariner Fin. Grp., Inc.*, 11 S.W.3d 349, 351-52 (Tex. App.—Houston [1st Dist.] 2000), *aff'd*, 79 S.W.3d 30 (Tex. 2002)). Because Preston failed to lodge a timely complaint about the arbitrator's failure to issue a timely award, we conclude he waived his complaints that the award was not timely.

Attorney's Fees

In issue five, Preston argues the arbitrator exceeded his authority by favoring Dyer with an award of attorney's fees. According to Preston, the parties agreed to pay attorney's fees only if there was an attempt to obtain interest in the other party's property, and the party seeking to do so prevailed in that effort. Although the disputes that were arbitrated did not include any issues regarding the characterization of Preston's or Dyer's property, the arbitrator awarded Dyer $25,000 in attorney's fees. According to Preston, the arbitrator had no authority to do so because the premarital agreement contains no provision for fees based on a recovery of either spousal support or child support.

As previously discussed, the scope of the disputes the parties agreed to submit to arbitration is broad. The TAA provides that arbitrators "shall award attorney's fees as

11

additional sums required to be paid under the award only if the fees are provided for: (1) in the agreement to arbitrate; or (2) by law for a recovery in a civil action in the district court on a cause of action on which any part of the award is based." Tex. Civ. Prac. & Rem. Code Ann. § 171.048(c). By statute, Texas allows Dyer to recover attorney's fees on a claim for child support. *See* Tex. Fam. Code Ann. § 106.002 (West 2008) (providing a recovery of attorney's fees in Title 5 cases); *Diaz v. Diaz*, 350 S.W.3d 251, 256 (Tex. App.—San Antonio 2011, pet. denied) ("[A] suit for divorce in which the parties are parents of minor children necessarily includes a suit affecting the parent-child relationship[.]"). Also by statute, Texas provides for a party to recover fees when successfully recovering on a claim for breach of contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008) (providing for recovery of attorney's fees for claims based on the breach of a written contract).

In this case, the arbitrator's award of fees is authorized by law; therefore, the arbitrator had the authority to award attorney's fees. *See Centex/Vestal*, 314 S.W.3d at 687. We conclude that the arbitrator had authority under the TAA to award attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.048(c). We overrule issue five.

### Contingent penalty of contempt

In issue four, Preston argues that by incorporating the child support award into the decree, the trial court converted his contractual obligation to a mandatory order, improperly exposing him to the possibility of contempt. According to Preston, because

12

his child support obligation arises from the premarital agreement, his obligation is purely contractual. *See Ex parte Hall*, 854 S.W.2d 656, 656-58 (Tex. 1993) (concluding that child support award based solely on the parties' prenuptial agreement was not enforceable by contempt). However, the parties' premarital agreement did not limit the arbitrator to a contractual award of child support. The premarital agreement provided: "This provision is not intended to interfere with the authority of the Court to establish and to order the payment of child support and the event of Court ordered child support[.]"

It is apparent from the arbitration award that the child support award was not based on the amount that Preston agreed to pay in the premarital agreement.[2] During the arbitration hearing, the evidence the parties presented touched upon various factors that are relevant to whether a party should be required to pay child support in an amount greater than that provided by the child support guidelines. *See* Tex. Fam. Code Ann. § 154.123 (West 2008) (listing seventeen non-exclusive factors that a trial court may consider in rendering a support award that varies from the guidelines). Additionally, the arbitration award recites that child support was awarded "per [the] Texas Family Code[.]"

---

[2]In his application to vacate the arbitrator's award, Preston did not ask the trial court to set aside the amount the arbitrator awarded for child support. The final decree reflects that the trial court determined that the arbitrator's award is in the best interest of the child. Additionally, in his appeal, Preston did not ask us to review the amount the trial court awarded in child support. *Cf. Stieren v. McBroom,* 103 S.W.3d 602, 605 (Tex. App.—San Antonio 2003, pet denied) (concluding that mother bore the burden of proving to the trial court that the award was not in the child's best interest in appeal in which mother sought to avoid arbitrator's award reducing father's child support payments).

13

Importantly, the child support award exceeds the amount Preston agreed to pay under the premarital agreement. Having examined the basis of the child support award, we conclude that the amount awarded was not purely contractual; instead, it was awarded based on the Family Code provisions allowing for an award exceeding the child support guidelines. *See id.*

Trial courts are entitled to enforce a party's failure to comply with a child support order by holding that party in contempt. *See id.* § 157.005 (West Supp. 2012) (stating that the court retains jurisdiction to render a contempt order for failure to comply with a child support order). We hold the trial court did not err by warning Preston that it could hold him in contempt if he failed to comply with the child support provisions of the final decree. We overrule issue four. Having overruled all of Preston's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 30, 2012
Opinion Delivered November 29, 2012
Before McKeithen, C.J., Kreger and Horton, JJ.

14